CITY OF LAS VEGAS, NEVADA, A MUNICIPAL CORPORA-
TION OF THE STATE OF NEVADA, APPELLANT/CROSS-
RESPONDENT, v. INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS, LOCAL 1285, AN UNINCORPORATED
ASSOCIATION, RESPONDENT/CROSS-APPELLANT.

No. 21277

January 24, 1992                                    824 P.2d 285

[Rehearing denied March 3, 1992]

*Roy A. Woofter*, City Attorney, and *Richard Bortolin*, Deputy
City Attorney, Las Vegas, for Appellant/Cross-Respondent.

*Hilbrecht & Associates* and *Jeffrey E. Fisher*, Las Vegas, for
Respondent/Cross-Appellant.

**OPINION**

*Per Curiam:*

Scott Harris was a fire investigator with the Las Vegas Depart-
ment of Fire Services (Fire Department), a division of the City of
Las Vegas (City), until October 16, 1988. On that day, the Fire
Department demoted Harris from fire investigator to firefighter.
This disciplinary action was prompted by three recent instances

of misconduct. First, Harris was observed using a computer terminal in a restricted fire services records room in violation of an existing order. Second, Harris used profane language over a Fire Department communications channel. Third, the Fire Department learned that Harris had received a misdemeanor citation for petty larceny in May, 1988, for taking a cordless telephone antenna from a Montgomery Ward store. Montgomery Ward chose not to pursue the charge, and it was dismissed before Harris was demoted. Prior to these incidents, Harris had been an exemplary employee for seventeen years.

After receiving the demotion notice, Harris filed a grievance, and was represented by the International Association of Firefighters, Local 1285 (Local 1285), respondent herein. Local 1285 is a labor organization representing firefighters and fire investigators employed by the City. Local 1285 and the City had negotiated a collective bargaining agreement (CBA) covering firefighters and fire investigators. The CBA incorporated two sets of documents dealing with discipline: the Fire Department's Rules and Regulations and the Positive Discipline Manual.

Local 1285 invoked binding arbitration to challenge Harris' demotion, contending that demotion was not an available disciplinary option under the CBA. Local 1285 also argued that no just cause for demotion existed. The arbitrator rejected these claims and sustained the City's decision demoting Harris.

The district court vacated the arbitration award on the basis that the arbitrator lacked authority under the CBA to sustain the City's disciplinary demotion of Harris. The City thereafter appealed from the district court's order vacating the arbitrator's award, and Local 1285 cross-appealed from that part of the order which allows the City to impose other discipline on Harris consistent with the negotiated agreement. Local 1285 also challenges the propriety of the arbitrator's consideration of petty larceny allegations for which Harris was not convicted.

We are persuaded that the arbitrator did not exceed his authority by sustaining the City's demotion of Harris. It is true that the Positive Discipline Manual specifies four disciplinary actions: oral reminder, written reminder, decision-making leave,[1] and discharge. Demotion is not mentioned as an option. However, article 9(C) of the collective bargaining agreement states:

The City and the Union recognize and understand that the

---

[1]Decision-making leave is given to an employee to decide whether he or she wants to continue working for the organization in compliance with its rules.

> Fire Department Rules and Regulations are general in nature and shall not be considered all inclusive. No inference will be drawn from the absence of a rule in the Fire Department Rules and Regulations.

It is thus seen that the established disciplinary framework was not inflexible. The City could have discharged Harris for insubordination under the Positive Discipline Manual's provisions for crisis discharge. In recognition of Harris' excellent record, the City chose to retain Harris in a less sensitive position. Given the latitude recognized under article 9(C) of the CBA, we must conclude that the power to discharge includes the lesser power to demote. We therefore hold that the City acted within the purview of the CBA by choosing demotion over discharge. *See* International Assoc. Firefighters v. City of Las Vegas, 107 Nev. 906, 823 P.2d 877 (1991).

Since demotion was an option available to the City, the arbitrator did not exceed his power by sustaining Harris' demotion. Therefore, the district court erred in vacating the arbitration award. NRS 38.145(1)(c).

On cross-appeal, Local 1285 argues that the arbitrator improperly considered the allegations of petty larceny against Harris in the absence of a conviction. At arbitration, Harris denied that he intended to steal a cordless telephone antenna from Montgomery Ward. However, the security manager of Montgomery Ward testified that she observed Harris, on closed circuit TV, unscrew the telephone antenna and carry it off. The security manager further testified that Harris signed a statement admitting he took the antenna after he was confronted outside the store.[2] Harris presented no exculpatory evidence. The arbitrator determined that the petty larceny incident was serious enough that preliminary discipline such as a warning or reprimand was unnecessary.

Contrary to Local 1285's assertion, our decision in International Assoc. Firefighters v. City of Las Vegas, 104 Nev. 615, 764 P.2d 478 (1988), does not prevent a public employee from

---

[2]The security manager testified to the following conversation with Harris outside the store:

> [Security manager]: I said I need to talk to you about the antenna you have in your hand. Would you please give it back? He looked at me and he opened his hand up and the antenna was there and I took it from him. I asked him to return to the store with us which he did, and as we were talking I said, "Do you have a cordless telephone that you own?" And he said, "Yes." I said, "Is your antenna broken on your phone?" And he said, "Yes." I said, "That must be why you did this." And he said, "Yes, it was stupid."

being disciplined for the underlying actions of a dismissed criminal charge. In *International Assoc. Firefighters,* firefighter Williams was suspended because he faced criminal charges of larceny. The district attorney dropped the charges after a witness was unable to identify Williams as the perpetrator of the crime. Since the authorities dropped the charges against Williams, we felt compelled to conclude that he didn't commit the crime. *Id.* at 621, 764 P.2d at 482. In the instant action, however, the charges were not dismissed for lack of evidence. Montgomery Ward simply chose not to demand prosecution, despite convincing evidence that Harris took the antenna. A conviction of petty larceny was an unnecessary prerequisite to a determination that Harris violated Fire Department Rules and Regulations requiring employees to obey the law and conduct themselves so as to reflect credit on the department. Moreover, despite overwhelming evidence against Harris, we note that the degree of proof required in a criminal action is of greater magnitude than that required in a disciplinary proceeding. *See* Thangavelu v. Department of Licensing & Regulation, 386 N.W.2d 584, 589 (Mich.Ct.App. 1986) (acquittal of criminal charges does not preclude disciplinary action for same conduct as administrative proceedings differ in purpose and degree of proof required); Flynn v. Board of Fire & Police Comm'rs, 342 N.E.2d 298, 304 (Ill.App.Ct. 1975) (sufficient evidence existed to discharge police officer for unlawful conduct despite state's voluntary dismissal of criminal charges). The petty larceny incident was properly considered by the arbitrator.

In view of our disposition of this appeal and cross-appeal, we decline to address other issues raised by the parties.

For the reasons specified above, the decision of the district court is reversed and the matter is remanded for entry of an order confirming the arbitration award sustaining the City's demotion of Harris.